FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ NOV 30 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

**DAVID PINCUS,**

Plaintiff,

- against -

**NEW YORK CITY DEPARTMENT OF EDUCATION,**

Defendant.

---

**DECISION AND ORDER**

16-cv-5253 (AMD) (JO)

**ANN DONNELLY,** District Judge.

The plaintiff, David Pincus, is a legally blind special education teacher employed by the defendant, the New York City Department of Education. The plaintiff alleges that the defendant engaged in an illegal scheme to terminate and replace him with a non-disabled, younger teacher, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, *et seq*. ("ADA"), the New York State Human Rights Law, New York Executive Law §§ 209, *et seq*. ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code §§ 8-101, *et seq.* ("NYCHRL"), and the New York Labor Law § 740. The plaintiff also brings causes of action for breach of contract, intentional infliction of emotional distress, and *prima facie* tort. The defendant moves to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

The plaintiff, who has been legally blind since he was four years old, began working as a special education teacher at P.S. 396 in 1994. (Compl. ¶¶ 9-10.)[1] In order to accommodate his disability, the defendant provided the plaintiff with a part-time paraprofessional to assist him. (Compl. ¶¶ 11, 21.) The paraprofessional helped the plaintiff fill out paperwork, monitor the classroom, access his computer, and read lesson plans. (Compl. ¶¶ 11, 16-17.) Between 1994 and 2010, the plaintiff received satisfactory evaluations and year-end reviews. (Compl. ¶ 12.)

Beginning in the 2010-2011 school year, however, the plaintiff alleges that the defendant began a "scheme" to remove him from his teaching position, and replace him with a younger, less expensive teacher. (Compl. ¶¶ 13-14.) The plaintiff says that he received a "significantly higher salary than his younger colleagues," because he was a twenty-year veteran of the Department of Education, and that the "cost of keeping the plaintiff on staff was greater than that of a sighted" teacher. (Compl. ¶12.) Thus, the plaintiff claims the defendants began "exploit[ing] [his] disability" in order to "remove his relatively burdensome teaching positon from the P.S. 396 budget." (Compl. ¶ 13.)

According to the plaintiff, the defendant created a "ruse" by removing the plaintiff's paraprofessional from the classroom during classroom observations, making it impossible for the plaintiff to read or print his lesson plans. (Compl. ¶ 14.) The plaintiff claims that the defendant took advantage of the "ruse" by charging him with not having lesson plans and giving him "ineffective/unsatisfactory" evaluations. (Compl. ¶ 15.) The plaintiff claims that during one observation he offered to give the principal a flash drive containing his lesson plan; the plaintiff maintains that the principal refused to accept the flash drive "so that [the principal] could falsely

[1] All citations to "Compl." are to the amended complaint filed on February 22, 2017. (ECF 13.)

report in the observation that [the plaintiff] did not have lesson plans." (Compl. ¶ 16.) During another observation, the plaintiff printed the incorrect lesson plan because he could not distinguish between lesson plans without the assistance of a paraprofessional. (Compl. ¶ 17.)

The plaintiff alleges that the defendant reassigned him to a science cluster position, which was an "act of cruelty," because the position required the plaintiff to travel between classrooms and transport his science equipment on a cart. (Compl. ¶ 19.) He claims that he was the "victim of disparate treatment" because another blind teacher, Christina Paulus, was given her own classroom. Both the plaintiff's and Ms. Paulus' requests for full-time paraprofessionals were denied, but the plaintiff claims that Ms. Paulus, unlike him, was "not held accountable for any actions she was unable to perform without a para[professional] and had no charges levied against her." (Compl. ¶ 21.)

In September of 2014, as a result of the unsatisfactory evaluations, the defendant filed disciplinary charges against the plaintiff under Section 3020-a of the New York Education Law. (Compl. ¶ 23.) The defendant claimed, among other charges, that during the 2011-2012, 2012-2013, and 2013-2014 school years, the plaintiff "failed to properly, adequately, and/or effectively plan and/or execute separate lessons," "failed to effectively implement supervisory directives, recommendations, counsel, instructions, and professional development," and "failed to follow school policy and procedure, used poor judgment, and/or demonstrated a lack of professionalism." (ECF 16, Ex. A at 3.) While the charges were pending, the defendant relieved the plaintiff of his teaching responsibilities, and reassigned him to an administrative position within the school. (*Id.*)

Pursuant to a collective bargaining agreement between the plaintiff and the defendant, James Conlon, a neutral arbitrator, adjudicated the twelve-day Section 3020-a proceeding, which began in May of 2015. (ECF 16, Ex. A at 1.) The plaintiff testified at the hearing, and was

represented by the counsel of his choice, who called witnesses, presented evidence, and cross-examined the defendant's witnesses. (ECF 16, Ex. A at 1, 25-40.)

In a decision dated January 25, 2016, Mr. Conlon found the plaintiff guilty of 21 out of 22 charges, including failing to execute lesson plans, neglecting his duties, failing to follow school policy, using poor judgment, demonstrating a lack of professionalism, failing to demonstrate proper classroom management, and failing to implement supervisory directives. (ECF 16, Ex. A at 41-57.) However, Mr. Conlon denied the defendant's request to terminate the plaintiff's employment, because the plaintiff "demonstrated a willingness to improve his pedagogy." (ECF 16, Ex. A at 58.) Instead, Mr. Conlon imposed a $6,000 fine, and instructed the plaintiff to take a teaching course. (ECF 16, Ex. A at 59.) Mr. Conlon specifically found that there was "no evidence in the record to support that Assistant Principal McCoy or Principal Nyitray were out to get Respondent or target him." (ECF 16, Ex. A at 52.)

On February 6, 2016, the plaintiff filed a CPLR Section 7511 petition challenging the arbitration decision, which is still pending in state court. (ECF 16, Ex. C.) He also filed charges with the Equal Employment Opportunity Commission ("EEOC") on February 19, 2016; the EEOC issued a Right to Sue letter on June 20, 2016. (ECF 16, Ex B., Compl. ¶ 6.) On September 21, 2016, the plaintiff filed his initial complaint in this action, which he amended on February 22, 2017. (ECF 1, 13.)

**DISCUSSION**

In evaluating a motion to dismiss, the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, an action will only survive if the law recognizes the claims, and if the complaint pleads "enough facts to state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). In the context of a discrimination action, the plaintiff must allege sufficient non-conclusory facts to "nudge" her claim "across the line from conceivable to plausible." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citations omitted).

Consideration is "limited to the factual allegations in plaintiff['s] [] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff [ ] had knowledge and relied on in bringing suit." *Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007). In addition, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)," including Section 3020-a proceeding awards. *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998); *see also Davis v. New York City Dep't/Bd. of Educ.*, No. 14-cv-2281, 2015 WL 5772204, at *8 (E.D.N.Y. Sept. 29, 2015) ("The Court therefore takes judicial notice of the Award from § 3020–a proceeding, plaintiffs Article 78 petition, and the subsequent court decision on plaintiff's petition."). Thus, I take judicial notice of the plaintiff's Section 3020-a proceeding award, Article 75 petition, EEOC Charge, and notice of claim, all of which are attached to the defendant's motion to dismiss. (ECF 16, Ex. A-D.)

**1. Discrimination Claims**

The plaintiff alleges that the defendant discriminated against him based on his age and disability, in violation of the ADA, NYSHRL, and NYCHRL. All of these claims are evaluated under the burden-shifting analysis articulated by the Supreme Court in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (*McDonnell–Douglas* applies to ADEA, NYSHRL, and NYCHRL claims); *Fall v. New York State United Teachers,* 289 Fed. Appx. 419, 422 (2d Cir. 2008) (same for ADA claims). To state a claim of discrimination under the *McDonnell–Douglas* test, a plaintiff must allege: (1) that he was within a protected group; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that "such action occurred under circumstances giving rise to an inference of employment discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010).

However, "the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a prima facie case under *McDonnell Douglas*." *Lax v. 29 Woodmere Blvd. Owners, Inc.,* 812 F.Supp.2d 228, 236 (E.D.N.Y. 2011). This is because, at the pleading stage, the Court does not apply the *McDonnell Douglas* burden-shifting test used to analyze the evidentiary support for discrimination claims. *See Kurian v. Forest Hills Hosp.*, 962 F. Supp. 2d 460, 468-69 (E.D.N.Y. 2013); *Gonzalez v. Carestream Health, Inc.,* 520 Fed.Appx. 8, 9 (2d Cir. 2013) ("To survive a motion to dismiss, a complaint alleging workplace discrimination . . . need not allege specific facts establishing a prima facie case under *McDonnell Douglas*."). "To measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage [would be] inappropriate," because "the prima facie

case operates as a flexible evidentiary standard" that "should not be transposed into a rigid pleading standard for discrimination cases." *Kurian,* 962 F. Supp. 2d at 468 (internal citations omitted).

Rather, "the Court asks only whether a plaintiff has pled a prima facie case, not whether a plaintiff has established that case." *Hitchins v. NYC Dept. of Educ.,* No. 11-cv-4180, 2013 WL 1290981, at *3 (E.D.N.Y. Mar. 28, 2013). The standard simply is "whether [the] plaintiff's complaint, construed liberally, satisfies the federal pleading requirements for a claim" of discrimination. *Id.* Even though establishing a prima facie case of discrimination is not necessary to survive a motion to dismiss, "courts do use the standard as a guidepost when determining whether the plaintiff has provided the defendant with fair notice of her claim, as required by the Federal Rules of Civil Procedure." *Kurian*, 962 F. Supp. 2d at 469. Thus, while a plaintiff need not allege specific facts establishing all the elements of a prima facie case under *McDonnell Douglas,* these elements can still "provide [a helpful] outline of what is necessary to render [a plaintiff's] claims for relief plausible." *Sommersett v. City of New York,* No. 09-cv-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

The defendant offers various reasons why each discrimination claim should be dismissed. I evaluate each claim in turn.

a. <u>ADA</u>

To make out a prima facie case of disability discrimination under the ADA, a plaintiff must show that (1) the employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of her disability. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 433 (E.D.N.Y. 2015). The defendant moves to dismiss the plaintiff's

ADA claims on two grounds. First, he argues that the plaintiff did not allege an adverse employment action. Second, the defendant argues that claims arising before April 25, 2014 are time barred.

i. *Adverse Employment Action*

The defendant moves to dismiss the plaintiff's ADA claim on the grounds that he has not alleged an adverse employment action. An adverse employment action is a "materially adverse change in the terms and conditions of employment . . . [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Bowles v. N.Y.C. Transit Auth.*, 285 Fed. Appx. 812, 814 (2d Cir. 2008) (citations and internal quotation marks omitted). Examples of adverse employment actions include, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 182 (E.D.N.Y. 2012) (citation and internal quotation marks omitted). However, "a bruised ego," a "demotion without a change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are insufficient to constitute a tangible or material adverse employment action. *Saunders v. Queensborough Cmty. Coll.*, No. 13-cv- 5617, 2015 WL 5655719, at *8 (E.D.N.Y. Sept. 24, 2015) (citing *Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)).

According to the plaintiff, the fact that the defendant reassigned him to a science cluster teaching position, relieved him of his teaching duties and placed him in an administrative role, issued him unsatisfactory performance evaluations, and "charged him with incompetence," satisfy the adverse employment action requirement. As the defendant correctly notes, unsatisfactory evaluations and job reassignments are generally not considered adverse employment actions. *See*

e.g., *Kelly v. N. Shore–Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 286 (E.D.N.Y. 2016); *Simmons v. New York City Health & Hosp. Corp.*, No. 99 CV 3181, 2001 WL 483675, at *5 (E.D.N.Y. Mar. 30, 2001) ("Negative evaluations alone, without any accompanying adverse consequence are not adverse employment actions."). However, where a reassignment "is materially less prestigious, materially less suited to his skills and expertise, [] materially less conducive to career advancement, . . . [or] so significant as to constitute a setback to [his] career, it is an adverse employment action within the meaning of the ADA." *Noon v. Int'l Bus. Machines*, No. 12-cv-4544, 2013 WL 6504410, at *7 (S.D.N.Y. Dec. 11, 2013).

Drawing all reasonable inferences in the plaintiff's favor, as I am required to do on a motion to dismiss, I conclude that the plaintiff's demotion to a purely administrative role is a materially adverse employment action sufficient to state a claim under the ADA.[2] *See e.g. DeNigris v. New York City Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 195 (S.D.N.Y. 2012) (The "plaintiff's transfer to positions for which she was arguably less suited and in which she enjoyed less responsibility were sufficiently adverse to constitute adverse employment actions, and make a prima facie showing of discrimination."). In addition, the plaintiff's allegation that his unsatisfactory evaluations lead to the initiation of a Section 3020-a hearing satisfies the materially adverse employment action requirement. *See e.g.*, *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005) (A Section 3020-a hearing satisfied the requirement of an "adverse employment action" in a First Amendment retaliation claim); *Weber v. City of New York,* 973 F. Supp. 2d 227, 268 (E.D.N.Y. 2013) (A Section 3020-a hearing satisfied the requirement of "adverse employment action" in a religious discrimination

[2] The arbitrator also fined the plaintiff $6,000, which is an adverse employment action. *See McPhatter v. Cribb*, 201 F.3d 431 (2d Cir. 1999) (noting that an adverse employment action includes fines).

claim under Title VII). Thus, the defendant's motion to dismiss the ADA claim in its entirety is denied.

ii. *Incidents Occurring Before April 25, 2014*

The defendant also argues that the ADA claim based on events occurring before April 25, 2014 is time-barred. Before filing an ADA action in federal court, a plaintiff is required to file a charge of discrimination or retaliation with the EEOC within 300 days of the discriminatory or retaliatory act. *See* 42 U.S.C. § 12117(a). "The Second Circuit has interpreted this EEOC filing requirement as a statute of limitations barring all claims arising from discrete acts which occurred outside of the 300-day period." *Wisneski v. Nassau Health Care Corp.*, 296 F. Supp. 2d 367, 375 (E.D.N.Y. 2003) (citing *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996)).

In this case, the plaintiff filed charges with the EEOC on February 19, 2015. The defendant argues that claims arising from events occurring before April 25, 2014—300 days before the EEOC filing—are barred under the ADA. The plaintiff's only argument in response is that the doctrine of equitable tolling should extend the limitations period.[3] According to the plaintiff, he did not file a claim with the EEOC until February of 2015 because he only "realized he was fighting a losing battle with the school" once the defendant initiated the Section 3020-a proceeding against him.

Equitable tolling is only appropriate "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation marks and alteration omitted). Included in this definition are situations "where the plaintiff actively pursued judicial remedies but filed a

[3] While the plaintiff does not raise the continuing violations doctrine as a defense to the defendant's motion, it would not extend the limitations period. *See Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (Finding that disciplinary proceedings were discrete acts, insufficient to trigger the continuing violations doctrine).

defective pleading during the specified time period, where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003) (internal citations omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.*

The plaintiff does not allege that he actively pursued judicial remedies. Nor does he allege any extraordinary circumstances, medical conditions, or actions by the defendant that prevented him from filing his EEOC claim earlier. The plaintiff's claim that he tried to "persevere through" the discrimination before filing a complaint is insufficient to extend the limitations period. Because the plaintiff failed to act with reasonable diligence in filing his complaint, the defendant's motion to dismiss portions of the plaintiff's ADA claims that rely on allegations concerning acts before April 25, 2014 is granted. However, the plaintiff may rely on these past events as background evidence in support of his timely claims of discrimination. *See Fanelli v. New York*, 51 F. Supp. 3d 219, 228 (E.D.N.Y. 2014) ("[A]llegations concerning acts that occurred outside the 300–day statute of limitations period . . . may be considered as background evidence in support of the timely grounds underlying the Plaintiff's Title VII claim.").

b. ADEA

The defendant moves to dismiss the plaintiff's age discrimination claim under the ADEA, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C.

§ 623; *Roginsky v. Cty. of Suffolk, N.Y.*, 729 F. Supp. 2d 561, 566 (E.D.N.Y. 2010). As an initial matter, it is not at all clear that the plaintiff has raised an ADEA claim, since neither the amended complaint nor the plaintiff's EEOC complaint mention the ADEA, nor does the plaintiff allege that he is over 40 years old. *See Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F.Supp.2d 230, 243 (E.D.N.Y. 2010) ("class entitled to the statutory protection of the ADEA is limited to persons 40 years of age or older.") The defendant's assumption that the plaintiff raised such a claim seems to be premised on the plaintiff's allegation that he "became a target of the [defendant] due to his advanced age . . . [and] earned a significantly higher salary than his younger colleagues." (Compl. ¶ 12.) Assuming for argument's sake that the plaintiff sufficiently alleged an ADEA violation, I nevertheless conclude that the claim should be dismissed for other reasons.

It is well-settled that an employment decision based "on financial considerations related to the employee's seniority is not actionable under the ADEA." *Williams v. City of New York*, No. 12-cv-8518, 2014 WL 1383661, at *11 (S.D.N.Y. Mar. 26, 2014), *aff'd,* 602 F. App'x 28 (2d Cir. 2015) (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 613 (1993)). "[T]here is nothing in the ADEA that prohibits an employer from making employment decisions that relate an employee's salary to contemporaneous market conditions and the responsibilities entailed in particular positions and concluding that a particular employee's salary is too high." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 117 (2d Cir. 1991). Indeed, "high salary and age may be related, but, so long as the employer's decisions view each employee individually on the merits, do not impose a general rule that has a disparate impact on older workers, and are based solely on financial considerations, its actions are not barred by the ADEA." *Id.* (internal quotations omitted).

The plaintiff claims that the defendant was motivated not by his age, but by his salary—that "[a]s a twenty year veteran, the plaintiff earned a significantly higher salary," and that the

defendant wanted "to remove his relatively burdensome teaching position from the P.S. 396 budget." (Compl. ¶¶ 12-13.) Even crediting these allegations as true, they fail to state a claim under the ADEA because they are based on "financial reasons related to [] seniority," which is not actionable. *See Williams*, 2014 WL 1383661, at *11. Accordingly, the claim is dismissed with prejudice.

c. NYSHRL and NYCHRL

The defendant moves to dismiss the plaintiff's discrimination claims under the NYSHRL and the NYCHRL on the grounds that the claims are barred by the preclusive effect of the Section 3020-a decision.[4] According to the defendant, because the Section 3020-a hearing arbitrator found that the plaintiff was guilty of incompetence, neglect, and insubordination, and found that there was "no evidence in the record to support that Assistant Principal McCoy or Principal Nyitray were out to get [the plaintiff] or target him," the plaintiff is collaterally estopped from raising the state and city law discrimination claims.

"Under New York law, collateral estoppel precludes a plaintiff from contesting in a subsequent action issues raised in a prior proceeding and decided against that party, irrespective of whether the tribunals or causes of action are the same." *El–Shabazz v. State of New York Comm. on Character & Fitness*, 428 Fed. Appx. 95, 96-97 (2d Cir. 2011). The doctrine of collateral estoppel does not by itself bar any claims—"it bars only the relitigation of issues." *Washington v. NYC Dep't of Educ.*, No. 16-cv-9588, 2017 WL 4687982, at *5 (S.D.N.Y. Oct. 16, 2017).

[4] The defendant concedes that collateral estoppel does not apply to ADA or ADEA claims. *See Astoria Fed. Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 110–14 (1991) ("[T]he [ADEA] ... carries an implication that the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims."); *Greenberg v. New York City Transit Auth.*, 336 F. Supp. 2d 225, 242 (E.D.N.Y. 2004) ("Though the Supreme Court has not dealt with the preclusive effect of collateral estoppel in an ADA case, it has extended . . . this logic to ADA cases in dicta.")

"The Second Circuit has explicitly held that a Section 3020–a hearing is a quasi-judicial administrative action whose findings are entitled to preclusive effect" as long as the requirements of collateral estoppel are met. *Mohammed v. New York City Dep't of Educ.*, 932 F. Supp. 2d 420, 427-28 (E.D.N.Y. 2013) (citing *Burkybile v. Bd. of Educ. of Hastings–on–Hudson Union Free Sch. Dist.*, 411 F.3d 306, 308 (2d Cir. 2005)). The doctrine of collateral estoppel bars the relitigation of legal or factual issue previously decided in a prior action where: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve v. Tamerin,* 269 F.3d 149, 153 (2d Cir. 2001) (citations omitted). "In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding." *Washington*, 2017 WL 4687982, at *6 (citing *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 501 (1984)).

The parties do not dispute that the issues raised in the Section 3020-a hearing are identical to those currently before the Court, including the claim that the defendant's motives in bringing charges against the plaintiff were improper. *See e.g. Mohammed,* 932 F. Supp. 2d at 428 ("Whether Plaintiff was terminated because of valid performance concerns or impermissible considerations is dispositive of Plaintiff's discrimination claims, and that same issue was raised in the Section 3020–a hearing."); *Mazur v. New York City Dep't of Educ.*, 53 F. Supp. 3d 618, 631 (S.D.N.Y. 2014), *aff'd,* 621 F. App'x 88 (2d Cir. 2015) ("Plaintiff's claims of age and disability

discrimination were necessarily decided in the 3020–a hearing in order to support a final judgment because they were her central defenses.")

The plaintiff argues, however, that the arbitrator was biased against him, and denied him a full and fair opportunity to litigate his claims.[5] This claim of bias is the subject of the plaintiff's Article 75 petition to vacate the arbitration award, which is currently pending in state court. Because there has been no determination on whether the Section 3020-a hearing was fair, it is premature to apply the doctrine of collateral estoppel. *See Fuller v. Interview, Inc.*, No. 07-cv-5728, 2014 WL 2601376, at *6 (S.D.N.Y. May 14, 2014) ("Since the arbitral award here is unconfirmed and the subject of a pending motion to vacate, it is not yet entitled to preclusive effect."). *Cf. Blythe v. City of New York*, 963 F. Supp. 2d 158, 175 (E.D.N.Y. 2013) ("Because the Article 75 court previously determined that the procedures employed in the § 3020–a hearing were fair, plaintiff's allegation that those procedures were not followed cannot support her stigma-plus claim); *Batyreva v. New York City Dep't of Ed.*, No. 07-cv-4544, 2010 WL 3860401, at *15 (S.D.N.Y. Oct. 1, 2010) (adopting R & R) (claim preclusion kept the court from reconsidering the fairness of a § 3020–a hearing because the Article 75 court decided that the hearing was fair). Accordingly, the defendant's motion to dismiss the NYSHRL and NYCHRL claims is denied.

**2. New York Labor Law Section 740**

Section 740 of the New York Labor Law prohibits an employer from taking "any retaliatory personnel action against an employee" who discloses an employer's violation of law to

---

[5] While it is not pertinent to my decision on a motion to dismiss, the plaintiff does not specify the basis for his claim that the arbitrator "approached the hearing with a bias" against the plaintiff, or that he had prejudged the case. The record of the proceedings does not reveal any obvious signs of bias. During the arbitration, which took place over twelve days, ten witnesses testified, including the plaintiff. There is no suggestion that the arbitrator interfered with the presentation of evidence, or that he kept the plaintiff from putting on a case. Moreover, the arbitrator appeared sympathetic to the challenges of teaching autistic children, and noted that the plaintiff's teaching had improved during the investigation. (ECF 16-1, at 53, 57.) While the arbitrator ruled against the plaintiff, he rejected the penalty urged by the defendant—termination—and commended the plaintiff as "a caring teacher, who with additional professional development and appropriate accommodations, would transform into a competent teacher." (*Id.* at 58.)

a supervisor or a public agency. N.Y. Lab. Law § 740(2). Section 740, however, does not apply to public employers like the defendant. *See Jagmohan v. Long Island R. Co.*, No. 12-cv-3146, 2014 WL 4417745, at *7 (E.D.N.Y. Sept. 8, 2014), *aff'd,* 622 F. App'x 61 (2d Cir. 2015); *Dibiase v. Barber*, No. 06-cv-5355, 2008 WL 4455601, at *5 (E.D.N.Y. Sept. 30, 2008). Public employers are covered by New York Civil Service Law § 75-b, and the plaintiff does not allege a violation of Section 75-b. Accordingly, the defendant's motion to dismiss the NYLL Section 740 claim is granted with prejudice.

**3. Breach of Contract**

The plaintiff alleges that the defendant breached the collective bargaining agreement ("CBA") because of its "egregious, unjustified conduct"—presumably, the alleged scheme to take advantage of the plaintiff's disability in order to initiate termination proceedings against him. Under New York law, when "an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement, but must proceed, through the union, in accordance with the contract." *Naval v. Fernandez*, No. 97-CV-6800, 1998 WL 938942, at *7 (E.D.N.Y. Nov. 20, 1998) (citing *Bd. of Educ., Commack Union Free School Dist. v. Ambach,* 70 N.Y.2d 501, 508 (1987). "[O]nly when the union fails in its duty of fair representation, an employee can go beyond the agreed procedure and litigate a contract issue directly against the employer." *Bd. of Educ., Commack*, 70 N.Y.2d at 508; *Friel v. Cty. of Nassau*, 947 F. Supp. 2d 239, 258 (E.D.N.Y. 2013) (internal quotation marks omitted). "This process is analogous to the procedure required by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), whereby a plaintiff may sue both her union for breach of its duty of fair representation and her employer, but

only after exhausting the grievance process." *Kai Jing Mai v. New York City Health & Hosps. Corp.*, No. 15-cv-4676, 2017 WL 4737279, at *3 (E.D.N.Y. Oct. 19, 2017).

The defendant argues that because the plaintiff failed to follow the contractually mandated grievance process, which requires arbitration of any breach of contract claim, the claim is barred. Since the parties did not attach the CBA to the complaint or the motion, there is no way for me to know what the contract requires the plaintiff to do.

In any event, the plaintiff did not adequately plead breach of contract. A plaintiff cannot maintain a breach of contract action based on a violation of a CBA "if the plaintiff fails to allege that the Union breached its duty of fair representation in handling [the] grievance." *Galanis v. Harmonie Club of The City of New York*, No. 13-cv-4344, 2014 WL 101670, at *8 (S.D.N.Y. Jan. 10, 2014) (dismissing a breach of contract claim against an employer where the plaintiff "not plead any facts about the Union or its duty of fair representation.") (citing *Chaney v. Greyhound Lines, Inc.,* No. 09-cv- 7593, 2010 WL 2541369, at *3 (S.D.N.Y. June 23, 2010)). The amended complaint makes no mention of the union or the duty of fair representation. Thus, the plaintiff has not stated a claim for breach of the CBA, and the claim is dismissed without prejudice.

**4. Intentional Infliction of Emotional Distress**

The defendant moves to dismiss the plaintiff's claim of intentional infliction of emotion distress. To state a claim for intentional infliction of emotion distress, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant, (2) that was intended to cause, (3) and that did cause, (4) severe emotional distress." *Grenzig v. Sachem Sch. Dist.*, No. 13-cv-7278, 2014 WL 11191093, at *3 (E.D.N.Y. Feb. 11, 2014). A plaintiff must plead conduct "so extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community." *Liang v. Café Spice SB, Inc.,* 911

F.Supp.2d 184, 214–15 (E.D.N.Y. 2012). As other courts in this district have noted, "[t]he New York Court of Appeals has rarely allowed a plaintiff to sustain a claim for intentional infliction of emotional distress in an employment discrimination case." *Id.* (citing cases).

The conduct alleged in this action does not rise to the level of extreme and outrageous. *See e.g. Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334, 359 (E.D.N.Y. 2013) (dismissing claim where the plaintiff alleged that the defendant refused accommodations, subjected the plaintiff to "abusive tactics," and brought disciplinary charges against her); *Rausa v. Bd. of Educ. of the N. Syracuse Cent. Sch. Dist.*, 11-cv-1152, 2012 WL 967052, at *10 (N.D.N.Y. Mar. 21, 2012) (dismissing claim where the plaintiff alleged that the defendant harassed her by initiating a Section 3020-a hearing and providing unfair evaluations because of her gender). In any event, even if the plaintiff had alleged extreme and outrageous conduct, "New York public policy 'bars claims sounding in intentional infliction of emotional distress against a governmental entity.'" *Thomas*, 938 F. Supp. 2d at 359 (citing *Lauer v. City of New York,* 659 N.Y.S.2d 57, 58 (N.Y. App. Div. 1997)). Therefore, the claim is dismissed with prejudice.

**5. *Prima Facie* Tort**

Under New York law, a claim of *prima facie* tort has four elements: (1) intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts that would otherwise be lawful. *Tarr v. Credit Suisse Asset Mgmt., Inc.*, 958 F. Supp. 785, 806 (E.D.N.Y. 1997). To state a claim for *prima facie* tort, the plaintiff must allege "that the actions complained of were motivated solely by malice or disinterested malevolence." *Id.* (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 464 N.Y.S.2d 712, 721 (N.Y. Ct. App. 1983)); *Montefusco v. Nassau Cty.*, 39 F. Supp. 2d 231, 239 (E.D.N.Y. 1999) ("[T]he plaintiff must establish that malevolence was the sole motive for the defendant's otherwise

lawful act."). "When there are other motives, such as profit, self-interest, or business advantage, there is no recovery under the doctrine of *prima facie* tort." *Marcella v. ARP Films, Inc.,* 778 F.2d 112, 119 (2d Cir. 1985); *Kalika v. Stern,* 911 F.Supp. 594, 605 (E.D.N.Y.1995) ("[I]f a defendant's motive is tainted by self-interest, profit or business advantage, a *prima facie* tort action cannot be sustained."). In addition, the plaintiff must allege special damages "with sufficient particularity to identify actual losses and be related casually to the alleged tortious acts." *Procter & Gamble Co. v. Quality King Distributors, Inc.*, 974 F. Supp. 190, 198 (E.D.N.Y. 1997).

The plaintiff did not allege that the defendant was motivated by disinterested malevolence. In fact, he alleges the opposite—that the defendant "exploited the plaintiff's disability in an effort to remove his relatively burdensome teaching position" in order to cut costs. (Compl. ¶ 13.) *See Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 285–86 (S.D.N.Y. 2017) ("[A] prima facie tort claim will be defeated where the conduct complained of is motivated by economic self-interest.") Nor did the plaintiff allege any special damages. *See e.g. Gray v. Grove Mfg. Co., a Div. of Kidde*, 971 F. Supp. 78, 81 (E.D.N.Y. 1997) (dismissing prima facie tort claim where the plaintiff alleged a "lump sum damages amount . . . with no attempt at itemization or specificity.") Thus, his claim for prima facie tort is dismissed with prejudice. *See Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 446 (S.D.N.Y. 1988), *aff'd,* 916 F.2d 820 (2d Cir. 1990) (dismissing prima facie tort claim with prejudice "because the existence of a business or profit motive appears on the face of the complaint.")

**6. The First Amendment**

The defendant moves to dismiss what it says is the plaintiff's First Amendment claim. Since neither the amended complaint nor the EEOC complaint raise a First Amendment claim,

there is nothing to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Kapeluschnik*, 1999 WL 33973360, at *12.

## CONCLUSION

The defendant's motion to dismiss is granted in part and denied in part. The motion to dismiss the ADA claims is denied, except as to claims occurring before April 25, 2014, which are time-barred, and dismissed with prejudice. The motion to dismiss the NYSHRL and NYCHRL claims is denied. The motion to dismiss the ADEA, NYLL, tort, and IIED claims is granted; the claims are dismissed with prejudice. The motion to dismiss the contract claim is granted; the claim is dismissed without prejudice.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
November 30, 2017